### 18371

J. C. LONG and Natalie C. Pfaehler, as Executor and Executrix of the Last Will and Testament of Vincent Chicco, Respondents, v. R. I. CONROY and The South Carolina National Bank of Charleston, as Executors of the Last Will and Testament of Pearl F. Chicco, as Parties defendant in the place and stead of Pearl F. Chicco, Appellants,

(143 S. E. (2d) 459)

*Messrs. S. S. Seideman, Hagood, Rivers* and *Young, Jack White* and *Jack P. Brickman,* of Charleston, *for Appellants,*

228

Messrs. *Gibbs & Gibbs* and *W. Turner Logan,* of Charleston, *for Respondents,*

Messrs. *S. S. Seideman, Hagood, Rivers & Young, Jack White* and *Jack P. Brickman,* of Charleston, *for Appellants,* in Reply.

July 1, 1965.

LEWIS, Justice.

This is a declaratory judgment action to determine the ownership of certain United States Treasury bearer bonds in the face amount of $100,000.00 and the accrued interest thereon, originally acquired by Vincent Chicco, deceased, and, after his death, claimed by his widow, Pearl F. Chicco, as her property by virtue of an alleged gift from him during his lifetime. The action was commenced against Mrs. Chicco to determine the issue of ownership as between her and her husband's estate and, after her death in 1961, was continued against her executors. The case was tried before a jury and resulted in a verdict that the bonds in question were the property of the estate of Vincent Chicco. From this judgment, the defendants, the executors of the estate of Mrs. Chicco, have prosecuted this appeal. During the trial of the case, the defendants made timely motions for a nonsuit and directed verdict and, after the trial, moved for judgment notwithstanding the verdict and for a new trial, all of which were denied. The exceptions on appeal challenge (1) the sufficiency of the evidence to sustain the judgment, (2) the admissibility of certain testimony, (3) the correctness of a portion of the charge to the jury, and (4) the provisions of the judgment as to interest.

Vincent Chicco, a resident of Charleston County, died on March 10, 1957, possessed of a large estate. He left a will in which, after a number of relatively small pecuniary bequests, the residue of his estate was devised in equal shares to his sister, Natalie C. Pfaehler; his widow, Pearl F. Chicco; and a niece Ursula S. Kaiser. His sister and widow, along with his close friend J. C. Long, were named as executrices and executor, respectively, of his will, all of whom qualified.

In the course of the administration of the estate of Vincent Chicco, question arose as to whether his estate or his widow owned certain United States Government bonds of the face

value of $100,000.00, and this action was instituted in 1959 by the plaintiffs, J. C. Long and Mrs. Pfaehler, two of the personal representatives of the estate of Mr. Chicco, against Mrs. Chicco for the purpose of determining the ownership of the bonds. Upon the service of the complaint, Mrs. Chicco filed a demurrer and an answer—only the answer being material here. In her answer, Mrs. Chicco admitted that she had in her possession at and after the death of her husband United States Government bonds in the face value of $100,-000.00, but alleged that they were given to her by her husband in 1948. She died in 1961 and this action was continued against her executors.

The defendants first contend that there was no competent evidence to sustain the verdict of the jury. This position is based solely upon the alleged inadmissibility of certain material testimony given by the witness J. C. Long. If the testimony in question was admissible, there can be no doubt that the verdict of the jury had ample support in the record, and we do not understand that the defendants contend otherwise. Since this is true, we find it unnecessary to review the facts, and confine our disposition of this phase of the appeal to a determination of the admissibility of the evidence in question.

As heretofore stated, this action was originally instituted by J. C. Long and Natalie C. Pfaehler as executor and executrix, respectively, of the estate of Vincent Chicco against Pearl F. Chicco. After the action was instituted Mrs. Chicco died and the executors of her estate were substituted as parties defendant. Therefore, the action became one by the executor and executrix of the estate of Vincent Chicco against the executors of the estate of his wife, Pearl F. Chicco. Upon the trial of the case, J. C. Long, an executor and a party plaintiff, was called as a witness for the plaintiffs. Over the objection of the defendants, Mr. Long was permitted by the trial judge to testify as to certain transactions and communications had by the witness with Vincent Chicco, whose estate he represented, and with Mrs. Chicco, against whose

estate he was then prosecuting the action. These transactions and communications were material to the proof of plaintiff's case and against the defendants. The objection by the defendants to the testimony of Mr. Long was based upon the contention that he was disqualified from testifying as to his transactions and communications with the decedents, Vincent Chicco and Pearl F. Chicco by the terms of Section 26-402 of the 1962 Code of Laws, commonly referred to as the Dead Man Statute.

It was the general rule at common law that a person interested in the outcome of an action could not be relied on to testify accurately and was therefore incompetent as a witness. 58 Am. Jur., Witnesses, Section 159. Following the common law, it was stated in *Vinyard, Executor C. Butler v. C. Brown, et al.,* 4 McCord 24: "The general rule is that a party to a suit on record cannot be a witness. The interest which he has in the subject matter in litigation where he sues in his own right and the consequent temptation to perjury is the foundation of the rule."

The foregoing common law rule has been changed in most respects by statute. Under Section 26-401 of the 1962 Code of Laws, a party to an action may testify in the same manner and subject to the same rules of examination as any other witness. Section 26-404 provides: "No person offered as a witness shall be excluded by reason of his interest in the event of the action." These sections, however, are subject to the exceptions set forth in Section 26-402, under which it is contended Mr. Long was disqualified from testifying in this case. The pertinent portions of Section 26-402 are as follows:

"Notwithstanding the provisions of § 26-401, no party to an action or proceeding, no person who has a legal or equitable interest which may be affected by the event of the action or proceeding, no person who, previous to such examination, has had such an interest, however the same may have been transferred or come to the party to the action or proceeding, and no assignor of anything in controversy in

the action shall be examined in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic as a witness against a party then prosecuting or defending the action as executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person or as assignee or committee of such insane person or lunatic, when such examination or any judgment or determination in such action or proceeding can in any manner affect the interest of such witness or the interest previously owned or represented by him."

This section was analyzed and its general application stated in *Norris v. Clinkscales,* 47 S. C. 488, 25 S. E. 797. It was there pointed out that the section acts to disqualify a person who falls within either or all of the designated classes only when his testimony partakes of all of the stated disqualifying characteristics. In other words, if a witness is either (1) a party to the action or proceeding or (2) a person having an interest which may be affected by the event of the trial, or (3) a person who has had such an interest, but which has been in any manner transferred to, or has in any manner come to, a party to the action or proceeding, or (4) an assignor of a thing in controversy in the action, he is disqualified only if the testimony of the witness is (a) in regard to any transaction or communication between the witness and a person deceased, insane or lunatic, and (b) against a party prosecuting or defending the action as executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, or survivor of such deceased person, or as assignee or committee of such insane person or lunatic, and (c) when the present or previous interest of the witness may in any manner be affected by the testimony or by the event of the trial.

In the *Norris case,* the court summarized its analysis of Section 26-402 as follows: "It will be thus seen that, to justify the exclusion of testimony under the proviso of section 400 (26-402), it should be shown to the satisfaction

of the trial judge—First, that the witness belongs to one or more, or to all, of the four classes of persons whose testimony may under certain circumstances be excluded; and, *secondly,* that his testimony partakes of, not merely one or two of the disqualifying characteristics classified under a, b, and c, but that it possesses all three of those characteristics. To illustrate: A witness may belong to all four of the classes of persons described under 1, 2, 3, and 4, and his testimony may fall under the divisions a and b, but if it does not also fall under division c then it would be error to exclude it."

Applying the foregoing tests to the witness J. C. Long, we find that he is a party to the action and, therefore, falls within at least one of the disqualified classes. The statute, however, does not bar a party to the action from testifying unless his testimony possesses all of the disqualifying characteristics. When we examine his testimony from this standpoint, we find that it partakes of all of the disqualifying characteristics and he would be disqualified from testifying, unless a disclaimer filed by the witness eliminates any present or previous interest of his that can be affected by the litigation. His testimony was (a) in regard to a transaction or communication between the witness and a person deceased, (b) against a party defending the action as executor of a deceased person, and (c) he had a present or previous interest (executor's commissions on the bonds) which could be affected by the determination of the action. The competency of the witness to testify, therefore, depends upon the effect to be given to a disclaimer or release filed during the trial.

When the witness J. C. Long was sworn, the following written disclaimer signed by him was introduced in evidence by the plaintiff:

"I, the undersigned J. C. Long, as one of the Executors of the Estate of Vincent Chicco, hereby disclaim and renounce any additional commissions as executor to which I may become entitled if it should be adjudged that the Estate of Vincent Chicco is entitled to a recovery in the above entitled action."

It is the position of the plaintiffs, sustained by the lower court, that the foregoing disclaimer effectively eliminated any legal or equitable interest of the witness in the litigation and made his testimony admissible.

Section 26-402 does not disqualify a witness from testifying as to transactions or communications with a deceased person when the present or previous interest of the witnesss will not be affected by the testimony or the event of the trial. *Riddle v. George,* 181 S. C. 360, 187 S. E. 524. In the *Riddle case* it was stated: "The test of the interest of a witness in the event which disqualifies him, under statute, from testifying in his own behalf against the personal representative of a deceased person, is that he will either gain or lose by the direct legal operation and effect of the judgment." At common law, before the enactment of Section 26-402, the test was the same and was stated as follows in *Spann v. Ballard,* Rice (24 S. C. Law) 440: "The general rule, established by all the cases, is, that in order to render a witness incompetent, his interest in the event of the suit, should be present, certain, and vested interest, and not uncertain and contingent."

At common law, where a witness was disqualified from testifying because of interest, the disqualification could be removed by a valid release or extinguishment of such interest, provided it was made in good faith. Our decisions recognized this rule, In *Cates v. The Heirs of Wacter,* 2 Hill 442, it was stated: "That a person offered as a witness in a cause, who has an interest in the result, may be rendered competent by releasing his interest, is a common and familiar principle."

The common law rule, permitting a witness to remove the disqualification of interest by executing in good faith a release or extinguishment thereof, is equally applicable under the Dead Man Statute (Section 26-402). In fact, this statute is simply a perpetuation within a limited scope of the discarded common law rule which disqualified a witness because of interest from testifying. These principles are concisely stated

as follows in 58 Am. Jur., Witnesses, Section 324: "At common law a release by a witness of his interest removed his disqualification. And in like manner, it is generally held that in the absence of contrary statute, a valid release of interest, made in good faith, removes the disqualification of an interested witness to testify in an action by or against the estate of a decedent." See: *Ex Parte Newton,* 183 S. C. 379, 191 S. E. 59, where it was recognized that a disclaimer of a right to executor's fees, approved by an order of court, effectively removed the statutory disqualification. Also, see 97 C. J. S. Witnesses § 149, p. 590; Anno: 28 A. L. R. 6.

Our inquiry then is: Did the disclaimer or release filed by the witness J. C. Long, a party to the action, effectively remove all disqualifying interest so as to make his testimony admissible?

The witness was not a devisee or legatee under the will. His connection with the estate of Vincent Chicco was that of executor and his only monetary interest in the subject matter of this litigation arose by virtue of his entitlement to executor's commissions on any recovery.

There can be no doubt, and the defendants do not question, that the disclaimer effectively and irrevocably extinguished any claim of the witness to executor's commissions to which he might be entitled for the handling of the property involved in the litigation. The good faith of the witness in executing the release is not questioned.

The defendants argue that the witness, as executor, has an unsettled claim against the estate of Vincent Chicco for attorney's fees which the result of this litigation might affect. The record does show that the witness will claim, in the final settlement of the estate of which he is an executor, compensation for legal services rendered to the estate in other matters. However, he is not attorney for the estate in this matter and the record clearly so shows. Therefore, he would not be entitled, under any circumstances, to a fee for this litigation, nor could any recovery influence or affect in any

way the determination of the amount of his fee for services rendered to the estate in other matters.

The defendant also contends that the liability for costs, incident to being a party to the action, gave the witness an interest in the event of the action, which the disclaimer did not eliminate. Section 10-1620 relieves an executor of any personal liability for costs incident to litigation on behalf of the estate except in cases of mismanagement or bad faith. There is no showing, inference, or contention of mismanagement or bad faith on the part of the witness as executor in the prosecution of this action and there could, therefore, be no personal liability for costs.

After the disclaimer was filed, there remained no interest of the witness in the matters involved which would disqualify him as a witness in the case, and the lower court properly permitted him to testify.

It is true that the witness Long remained a party to the action and was interested, as such, in the successful prosecution of the action. The mere fact, however, that he was a party to the action did not impose upon him a disqualifying interest as a witness. Sections 26-401 and 26-404 clearly permit a party to the action to testify unless disqualified by Section 26-402. We have concluded that such disqualification was removed by the disclaimer filed.

The next question to be decided arises under exceptions which charge error on the part of the trial judge in admitting in evidence a letter written by the witness J. C. Long to Natalie C. Pfaehler on January 22, 1959. The objection to the introduction of this letter was upon the ground that it was hearsay testimony.

We need not decide whether the letter in question violated the hearsay rule; for, assuming its inadmissibility upon that ground, its introducion in evidence was clearly harmless.

It appears that the witness J. C. Long wrote several letters to Mrs. Chicco concerning the ownership of the bonds in question in an effort to obtain from her a definite statement

as to whether she intended to claim ownership thereof. During this time, Mr. Long was informed by Mrs. Pfaehler, a party to this action and a devisee under the will of Vincent Chicco, of a conversation had by Mrs. Pfaehler with Mr. Chicco shortly before his death in which she was told by him that the bonds in question were held by Mrs. Chicco under an oral agreement that they would be divided at the death of Mr. Chicco among the devisees of his will. Upon being so informed, Mr. Long wrote a letter to Mrs. Pfaehler on January 22, 1959, stating the substance of his prior conversation with her about the bonds and asked that she verify in writing his recollection of the statements made to him by her, which she did. Mr. Long then wrote a letter to Mrs. Chicco on February 25, 1959, sending her a copy of the verified letter which he had written to Mrs. Pfaehler on January 22, 1959, requesting that Mrs. Chicco, in the light of the statements of Mrs. Pfaehler, advise him of her position as to the ownership of the bonds. Mrs. Chicco failed to reply to any of the letters of Mr. Long concerning the matter.

During the trial, Mr. Long identified the foregoing letters and they were received in evidence. The letter in question, that of Mr. Long to Mrs. Pfaehler, was not offered or received in evidence as an independent exhibit but as an attachment to the letter of February 25th of Mr. Long to Mrs. Chicco. There is no exception on appeal which challenges the admissibility of Mr. Long's letter of February 25th to Mrs. Chicco, other than those challenging the competency of the witness Long under Section 26-402, with which we have already dealt. Therefore, we must assume the admissibility of that letter and its contents, in which was the following statement:

"Therefore, as managing executor of the estate, I wish to advise you of the statements of Mrs. Pfaehler, that Vincent had advised her that the $100,00.00 worth of bonds which you hold were in substance his property, and that upon his death they were to be divided equally among you, Mrs. Pfaehler and Mrs. Kaiser."

The foregoing quotation from the letter of February 25th, to which no objection is raised on appeal, is simply a concise statement of the factual contents of the letter of January 22nd to Mrs. Pfaehler. The letter now in question was therefore merely cumulative to other evidence received in the case and, under settled principles, if error, was harmless.

The defendants next contend that the trial judge erred "in charging that the burden of proof was upon the defendant to prove a gift without also charging that there is a presumption that a conveyance, transfer or delivery to a wife by a husband is a gift."

The trial judge instructed the jury, both in the main charge and later upon request by the jury for further instructions, that the burden of proof rested upon the defendants to prove that the deceased had made a valid and complete gift of the bonds in question in 1948. The jury was not instructed that a conveyance or transfer of property by a husband to his wife gives rise to a presumption that a gift to her of such property was intended. The defendant contends that the failure of the trial judge to so instruct the jury was error.

We might well overrule this exception upon the ground that the record fails to show any request to charge as now contended. However, the trial judge recognized, in his order disposing of the motion for a new trial, that an objection of some kind had been made by the defendants to the charge, and considered the question now raised. In view of that fact, we will consider the merits of the exception.

The instruction that the burden of proof rested upon the defendants to prove the alleged gift was in accord with the general rule that the burden of establishing the fact of a gift is on the one who asserts it. 24 Am. Jur., Gifts, Section 115; 41 C. J. S. Husband and Wife § 153 (b), p. 630; 38 C. J. S. Gifts § 65 (b), p. 856. The defendants contend that they were entitled in addition to an instruction

that the transfer or conveyance of property by a husband to his wife gives rise to a presumption that a gift was intended.

Although our decisions adopt the general rule that a gift is presumed where a husband conveys or transfers property to his wife, *Caulk v. Caulk*, 211 S. C. 57, 43 S. E. (2d) 600, the evidence must show facts and circumstances upon which such presumption can be based.

The basic issue in this case was whether Mr. Chicco had made a valid and complete gift of the Government bonds to Mrs. Chicco during his lifetime. There was no evidence of any transfer or conveyance of title to the bonds to Mrs. Chicco, or any other circumstance which would give rise to a presumption of a gift. It is true that they were found in her possession after his death, but "mere possession by an alleged donee of the alleged donor's property after the latter's death raises no presumption of ownership." 24 Am. Jur., Gifts, Section 115; 26 Am. Jur., Husband and Wife, Section 95.

Since there was a total absence of testimony which would give rise to a presumption of a gift of the bonds by Mr. Chicco to his wife, the trial judge properly omitted any reference in his charge to such presumption.

The final question concerns the amount of interest which the plaintiffs are entitled to recover. The verdict of the jury established that Mr. Chicco was the owner of the Government bonds in question at the time of his death on March 10, 1957, and that the plaintiffs were entitled to possession of the bonds as of that date. Following the verdict of the jury, the lower court entered judgment in favor of the plaintiffs "for the immediate possession of United States Treasury Bonds of the face value of One Hundred Thousand and no/100 ($100,000.00) Dollars, together with all interest coupons thereon as of March 10, 1957; and in the event delivery thereof cannot be had, then for One Hundred Thousand and no/100 ($100,000.00) Dollars, with interest thereon at the legal rate from and after March 10, 1957."

240

The exception of the defendants to the foregoing judgment asserts that the trial judge "erred in not ordering that the defendants had the right to deliver $100,000.00 worth of United States Treasury Bonds and the interest that any missing coupons would have accumulated.". The short answer to the exception is that this is exactly what the judgment of the lower court ordered. Under the judgment, the defendants have the right to deliver to the plaintiffs the bonds in question, "together with all interest coupons thereon as of March 10, 1957.". This simply means that, if the bonds are still in the possession of the defendants, they are to be delivered to the plaintiffs together with the interest accrued thereon, according to the terms of the bonds and the interest coupons attached. The exception does not challenge the alternative provisions of the judgment in the event possession of the bonds cannot be had.

All exceptions are accordingly overruled and the judgment of the lower court affirmed.

Affirmed.

TAYLOR, C. J., and MOSS and BRAILSFORD, JJ., concur.

BUSSEY, J., not participating.