493 S.E.2d 503

Warren C. SAUERS and Nancy W. Sauers, Plaintiffs,

v.

POULIN BROTHERS HOMES, INC. and COTA Southeast, Defendants,

Of Whom Poulin Brothers Homes, Inc. is the Third–Party Plaintiff/Appellant,

v.

LEE MOORE PLASTERING and Jimmy Summers d/b/a Summers Roofing Company, Third–Party Defendants/Respondents.

No. 2743.

Court of Appeals of South Carolina.

Submitted Oct. 8, 1997.

Decided Nov. 3, 1997.

602

Stephen P. Groves, of Young, Clement, Rivers & Tisdale, Charleston, for appellant.

William S. Duncan, Georgetown, for plaintiffs.

Clifford L. Welch, of Wheless & McInnis, North Myrtle Beach, for respondent Lee Moore Plastering.

George C. Kosko, Pawleys Island, for respondent Jimmy Summers d/b/a Summers Roofing Company.

HOWELL, Chief Judge:

Warren and Nancy Sauers (the Homeowners) filed an action against Poulin Brothers Homes, Inc. (Poulin), their general contractor, and others over problems with the construction of their new home. Poulin asserted third-party indemnification claims against various subcontractors, including Lee Moore Plastering (Moore), the subcontractor responsible for applying

the stucco exterior of the house. Before trial, all claims except Poulin's indemnification claim against Moore settled, and the case proceeded to trial. The jury returned a verdict in favor of Moore. Poulin appeals, and we affirm.

## I.

Shortly after moving into their new home, the Homeowners noticed that the house began "developing the measles"—that is, thousands of rust-colored spots began appearing on the stucco exterior of the house. An attempt to remedy the problem through the "pick and patch" [1] method failed, and the spots reappeared after a few months. Poulin and Moore then "re-skinned" the house, putting a new coat of stucco over the entire house. Shortly after this procedure, cracks appeared in the stucco finish, and the Homeowners began having problems with water intrusion into the house.[2] Poulin then hired an expert who performed destructive testing to determine the cause of the problems. According to the expert, Moore had improperly applied the paper-backed lathing stucco system, which caused the stucco to crack and allowed water to enter the house. It was ultimately determined that the only way to fully repair the problems with the house was to remove the stucco completely and reapply it to the entire exterior of the house.

## II.

On appeal, Poulin contends the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. According to Poulin, there was unrefuted evidence at trial establishing Moore's negligence; thus, Poulin argues it was entitled as a matter of law to judgment against Moore in the amount of $148,000, the amount Poulin paid in

---

**1.** This procedure involves picking the spots off the stucco and patching the affected areas with a new coat of stucco.

**2.** According to Mrs. Sauers, the "walls are a hundred percent moisture. The draperies in two rooms are completely ruined, soaked. Water comes pouring in the palladian windows. The wallpaper is destroyed. I have to keep towels and buckets when you have any—if you have a heavy rain.... [T]he water comes underneath the front doors. You have to have towels there."

settlement of the Homeowners' claim. In the alternative, Poulin contends it is entitled to judgment in its favor on Moore's liability and a new trial to determine damages only. We disagree.

When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, this Court must employ the same standard as the trial court—that is, we must consider the evidence in the light most favorable to the non-moving party. *See, e.g., Brady Dev. Co. v. Town of Hilton Head Island,* 312 S.C. 73, 439 S.E.2d 266 (1993). Neither a directed verdict nor judgment notwithstanding the verdict should be granted unless only one reasonable inference can be drawn from the evidence. *Id.; see also Dalon v. Golden Lanes, Inc.,* 320 S.C. 534, 466 S.E.2d 368 (Ct.App. 1996). When considering the motions, neither this Court nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony and evidence. *Garrett v. Locke,* 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992).

In this case, Poulin's expert testified that Moore's application of the stucco system violated industry standards as well as applicable building codes, causing water intrusion into the home. According to Poulin's expert, if the problems with the house were not corrected, the house would continue to suffer water damage and wood decay and eventually would collapse.

Moore did not refute this testimony with its own expert. Instead, the only evidence offered by Moore was the testimony of Lee Moore, the sole proprietor of Lee Moore Plastering. Mr. Moore, who was not qualified as an expert, did not offer testimony about industry standards for the application of stucco exteriors or the requirements of the applicable building codes. Mr. Moore testified only about his general practices in applying stucco, and about how the stucco was actually applied to the Homeowners' house.

Nonetheless, contrary to Poulin's assertion, the fact that the testimony of its expert was not directly refuted does not automatically entitle it to a directed verdict. As a general rule, the jury is free to accept or reject in whole or in part the testimony of any witness, including an expert witness. *See*

*State v. Milian–Hernandez*, 287 S.C. 183, 186, 336 S.E.2d 476, 478 (1985) (The jury may properly disregard expert testimony.); *State v. Campen*, 321 S.C. 505, 510, 469 S.E.2d 619, 622 (Ct.App.1996) (Although the only expert testimony established that the defendant had the ability to conform his conduct to standards of right and wrong, the expert's testimony was not "dispositive, inasmuch as the jury could have elected to disregard [the expert's opinion]."); *State v. Smith*, 304 S.C. 129, 131, 403 S.E.2d 162, 163 (Ct.App.1991) (The jury is free to believe one portion of a witness's testimony and disbelieve another.); *accord Smith v. Safeco Life Ins. Co.*, 303 S.C. 131, 399 S.E.2d 427 (Ct.App.1990), *cert. dismissed as improvidently granted*, 308 S.C. 94, 417 S.E.2d 537 (1992).

As this Court explained in *Black v. Hodge*, 306 S.C. 196, 410 S.E.2d 595 (Ct.App.1991):

> [T]he essential issue is whether the jury was required to accept [the plaintiff's] uncontradicted testimony that she was injured. Stated in the larger sense, the question is simply this: must a trier of fact always believe uncontradicted testimony? The answer to the question is, plainly, no.
>
> The fact that testimony is not contradicted directly does not render it undisputed. There remains the question of the inherent probability of the testimony and the credibility of the witness or the interests of the witness in the result of the litigation. "If there is anything tending to create distrust in his [or her] truthfulness, the question must be left to the jury."
>
> The fact that the collision between the two vehicles was slight, to say the least, together with the fact that [the plaintiff] has an obvious interest in the outcome of the case, is sufficient to cast doubt on the testimony that she was injured. Under the circumstances, the jury had the right to find that she was not injured, and we do not have the right to second-guess the jury.

*Black*, 306 S.C. at 198, 410 S.E.2d at 596 (citations omitted).

In this case, the jury had ample reason to question the truthfulness of Poulin's expert. Although the expert originally was hired only to determine the cause of the Homeowners' problems, the testimony established that his company later received the $136,000 contract to remove and re-stucco the

house. Thus, the expert's potential bias and interest in the litigation provided the jury with a reason to distrust his testimony.

Moreover, even if the expert's uncontradicted testimony did establish Moore's *negligence* as a matter of law, it did not establish Moore's *liability* as a matter of law. Negligence is actionable only if it is a proximate cause of the injury. *Hanselmann v. McCardle*, 275 S.C. 46, 267 S.E.2d 531 (1980); *Vinson v. Hartley*, 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996). While Poulin's expert testified that Moore's deficient installation of the stucco system caused water to enter the home, he also testified that only six of the home's 40 windows and 10 doors had flashing, which is necessary to prevent water intrusion into the door or window assembly. The expert testified that window and door flashing is generally the responsibility of the carpenter, not the contractor applying the stucco. The expert also testified that he found 14 locations where the roof flashing, which was the responsibility of the roofing contractor, was improperly installed, again causing water damage. Almost all of the specific areas of water damage identified by Poulin or his expert were located in doors, windows, and roof intersections. Therefore, given the evidence presented at trial, it was for the jury to determine whether any negligence on the part of Moore proximately caused the damage to the house.

Similarly, even if the expert testimony established that Moore was negligent as a matter of law, the evidence presented at trial created a jury question about the degree to which Moore's negligence may have contributed to the damages suffered by the Homeowners. Cross-examination of Poulin's expert established that supervision of the various subcontractors is the responsibility of the general contractor. The expert testified that the absence of door and window flashing and the improper roof flashing were open and obvious, and that the problems should have come to the attention of the general contractor. Therefore, the evidence was sufficient to support a determination by the jury that any negligence on the part of Moore was exceeded by that of Poulin, thus defeating Poulin's claim against Moore. *See Nelson v. Concrete Supply Co.*, 303 S.C. 243, 245, 399 S.E.2d 783, 784 (1991).

608

("[A] plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant.").

Because the evidence in the record supports the verdict, "irrespective of how the jury may have arrived at it," *Steele v. Dillard,* 327 S.C. 340, 343, 486 S.E.2d 278, 280 (Ct.App.1997), the trial court properly denied Poulin's motions for directed verdict and judgment notwithstanding the verdict.[3]  Accordingly, for the foregoing reasons, the decision of the trial court is hereby

AFFIRMED.

HEARN and STILWELL, JJ., concur.

**3.**  The trial court used a general verdict form and instructed the jury that it should return a verdict in favor of Moore if it concluded that Moore was not negligent, if it concluded that Moore's negligence was not a proximate cause of Poulin's damages, or if it concluded that Poulin was more than 50% negligent.